IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS M. FUEHRER | : | CIVIL ACTION |
| | : | |
| v. | : | No. 16-5248 |
| | : | |
| ANDREW SAUL, | : | |
| *COMMISSIONER OF SOCIAL* | : | |
| *SECURITY*[1] | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                          **October 28, 2019**

Plaintiff Douglas M. Fuehrer seeks review of the Commissioner of Social Security's denial of his applications for a period of disability and disability insurance benefits (DIB) and for supplemental security income (SSI). United States Magistrate Judge Timothy R. Rice has issued a Report and Recommendation recommending that Plaintiff's request for review be denied. Plaintiff objects to the Report and Recommendation, arguing the Magistrate Judge erred in concluding the Administrative Law Judge (ALJ) (1) properly weighed opinion evidence from two of Plaintiff's treating physicians in evaluating Plaintiff's residual functional capacity (RFC), (2) supported his RFC assessment with substantial evidence, and (3) adequately considered the combined effects of Plaintiff's impairments. Upon de novo review of the Report and Recommendation, the Court agrees with the Magistrate Judge that the ALJ's determination is supported by substantial evidence. Accordingly, Plaintiff's objections will be overruled, the Report and Recommendation will be approved and adopted, and Plaintiff's request for review will be denied.

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), Saul is substituted as the Defendant in this case.

**BACKGROUND**[2]

In a decision issued on May 13, 2015, an ALJ, applying the Social Security Administration's five-step sequential evaluation process for evaluating DIB and SSI claims, *see* 20 C.F.R. §§ 404.1520(a), 416.920(a), found Plaintiff was not disabled. The ALJ found Plaintiff suffered from several severe physical and mental impairments: degenerative disc disease of the lumbar spine, status post fracture of the lower right limb, cubital tunnel syndrome, major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder, and a personality disorder. R. at 12. But the ALJ determined these impairments, individually and in combination, did not render him per se disabled. R. at 14-16.

The ALJ thus proceeded to determine Plaintiff's RFC,[3] finding that, despite his limitations, he could still perform "light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to several additional restrictions. R. at 16. Specifically, the ALJ found Plaintiff could lift and carry 20 pounds only occasionally and 10 pounds frequently; could sit for a total of six hours and stand and walk for a total of six hours in an eight-hour workday; could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs only occasionally with no climbing of ladders and scaffolds; could have only occasional exposure to humidity, wetness, and extreme cold; could perform only routine and repetitive tasks and use judgment consistent with such tasks; and could tolerate only occasional changes in a routine work setting. *Id.* Given these limitations, the ALJ found Plaintiff could not perform his past relevant work as a roofer.

---

[2] The procedural history and record evidence regarding Plaintiff's DIB and SSI claims are exhaustively reviewed in the Report and Recommendation.

[3] A claimant's residual functional capacity is "the most [the claimant] can still do" in a work setting despite his physical and mental limitations as a result of his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

R. at 22. However, crediting the hearing testimony of a vocational expert, the ALJ found Plaintiff was capable of making a successful adjustment to other work as he could perform the requirements of representative occupations such as housekeeper, packer, and inspector. R. at 23. In formulating his RFC finding, the ALJ gave "little weight" to form "Physical Medical Source Statements" completed by two of Plaintiff's treating physicians—Jeffrey Darnall, M.D. and Daniel Rubino, M.D.—both of whom opined that Plaintiff had disabling functional limitations as a result of his lumbar spine issues. *See* R. at 20. The ALJ gave "partial weight" to opinion evidence from a third doctor, consultative examiner Andrew Bongiovanni, D.O., who offered a less restrictive assessment of Plaintiff's ability to perform work-related activities. *See* R. at 19.

In his request for review, Plaintiff argues the ALJ's RFC finding is not supported by substantial evidence because the ALJ (1) erred in giving Dr. Darnall and Dr. Rubino's opinions "little weight," (2) formulated his own RFC finding without regard to the record, and (3) failed to consider the combined impact of Plaintiff's physical and mental impairments. After conducting a thorough review of the record, the Magistrate Judge issued a Report and Recommendation addressing each of the asserted errors and recommending Plaintiff's request for review be denied. Plaintiff objects to the Magistrate Judge's analysis of each of the issues raised in his request for review.

**DISCUSSION**

Under 28 U.S.C. § 636(b)(1), this Court reviews Plaintiff's objections to the Report and Recommendation de novo. Review of a final decision of the Commissioner of Social Security, however, is limited to determining whether the decision is supported by substantial evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

(quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). It requires "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (quoting *Ginsburg v. Richardson*, 436 F.3d 1146, 1148 (3d Cir. 1971)). Where there is substantial evidence in the record to support the Commissioner's findings, a court is bound by those findings, even if the record also contains other evidence that could support a finding of disability. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Plaintiff's primary objection concerns the ALJ's evaluation of opinion evidence from Dr. Darnall and Dr. Rubino. Plaintiff contends the ALJ should have given these opinions "controlling weight," or at least "significant weight," under the regulations in effect when his DIB and SSI claims were filed. Under those regulations, a treating physician's opinion on the nature and severity of a claimant's impairment is entitled to "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" *and* "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If a treating physician's opinion is not entitled to controlling weight, the ALJ may reject the opinion outright "only on the basis of contradictory medical evidence," but may afford the opinion "more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Factors to be considered in determining the appropriate weight to give a treating physician's opinion include, inter alia, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the source was a specialist. *See* 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). The ALJ may also consider other factors, including the source's "amount of understanding of [the Social Security

Administration's] disability programs and their evidentiary requirements." *Id.* §§ 404.1527(c)(6), 416.927(c)(6). The Third Circuit has noted that form reports, like the Physical Medical Source Statements at issue in this case, "in which a physician's obligation is only to check a box or fill in a blank[,] are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993); *accord Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017).

Dr. Darnall, Plaintiff's primary care physician, completed a Physical Medical Source Statement for Plaintiff in November 2014. In response to the questions on the form, he listed Plaintiff's diagnoses as chronic lumbar pain, depression, and chronic hepatitis C, and identified pain as Plaintiff's sole symptom, characterizing the pain as "severe, constant, lumbar, radiates to leg." R. at 416. Dr. Darnall opined that, as a result of his impairments, Plaintiff could sit and stand/walk for less than two hours total in an eight-hour workday, would require the use of a cane or other hand-held assistive device while standing and walking, and would require four to six unscheduled breaks of 15 to 20 minutes each due to muscle weakness and back pain. R. at 417-18. He also opined that Plaintiff could lift or carry 20 pounds only rarely and 10 pounds or less occasionally, and could climb stairs occasionally, stoop only rarely, and never twist, crouch, or climb ladders. R. at 418. He stated Plaintiff was likely to be off task 20% of the time and to be absent from work more than four days per month. R. at 419.

The ALJ gave Dr. Darnall's opinion "little weight," finding it was inconsistent with other clinical and objective findings in the record and noting Dr. Darnall "lack[ed] program knowledge." R. at 20. The ALJ specifically found Dr. Darnall's opinion was not supported by findings from (1) his own physical examination of Plaintiff in April 2012, which noted Plaintiff exhibited "normal range of motion and strength of the extremities with no focal neurological

5

deficits and a normal gait"; (2) a June 2014 physical examination by treating orthopedist Thomas Duffy, D.O., which found "normal lower extremity strength bilaterally and normal neurovascular functioning"; (3) a June 2014 examination by urgent care physician David Figucia, M.D., which found "normal lower extremity strength bilaterally and a normal gait"; and (4) a January 2015 examination by urologist David Raezer, M.D., which noted that Plaintiff "had no musculoskeletal or neurological complaints." R. at 20.

Plaintiff argues the ALJ erred in concluding Dr. Darnall's opinion was not supported by the medical evidence because, notwithstanding the findings cited by the ALJ, other medical evidence in the record supports the opinion. Plaintiff contends Dr. Darnall's opinion is consistent with his own examination findings, with objective diagnostic evidence (x-rays and an MRI) revealing problems at the base of Plaintiff's lumbar spine, and with other examination findings in the record by Dr. Duffy, Dr. Figucia, and other providers. He argues the ALJ erred in ignoring the record evidence supporting Dr. Darnall's opinion. The Court disagrees.

As an initial matter, Dr. Darnall's own examination findings provide scant support for his opinion. Although Plaintiff saw Dr. Darnall at least six times between April 2012 and November 2014, he did not complain of back pain until June 2014, at which time he stated the pain did *not* radiate into his legs, contrary to the characterization in his Physical Medical Source Statement. *Compare* R. at 361, *with* R. at 416. Dr. Darnall's examination findings from that visit include a finding of lumbar spasm bilaterally; however, he also noted Plaintiff was in "no acute distress" at the time. R. at 362. The only other relevant examination findings in Dr. Darnall's treatment notes are the findings from his original examination of Plaintiff in April 2012 that Plaintiff had "[n]ormal gait, neck and spine with normal alignment and mobility" and "[n]ormal range of motion and strength" of the extremities with no focal neurologic deficits. R. at 414. While Dr.

Darnall's November 2014 Physical Medical Source Statement lists tenderness, spasm, and decreased range of motion as the relevant "clinical findings and objective signs," R. at 416, his treatment notes do not include examination findings of tenderness or decreased range of motion.

With respect to the diagnostic evidence, the ALJ did not ignore the studies cited by Plaintiff—lumbar spine x-rays taken in April 2014 and a lumbar spine MRI taken in June 2014. Rather, as the Magistrate Judge noted, the ALJ expressly acknowledged these studies and "correctly summarized their findings," many of which were also present in pelvic CT scans Plaintiff underwent in November 2012 and January 2013 for urologic issues. R. & R. 17-18 (citing R. at 17). The ALJ recognized that the diagnostic evidence shows spinal impairment, including "multilevel degenerative changes, spondylosis, spondylolisthesis and bilateral neural foraminal stenosis at the L5-S1 level, and compression of the L5 nerve root." R. at 17. But whether that impairment is disabling depends on "the functional limitations that result from th[e] impairment." *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004). As the Magistrate Judge noted, evidence of Plaintiff's spinal impairment was present to a substantial degree when Dr. Bongiovanni examined him in June 2013, found no neurological deficits and only mildly limited lumbar range of motion, and opined that he could perform a far greater range of work-related activities than Dr. Darnall. *See* R. at 275-76; R. at 380 (January 2013 CT scan showing anterolisthesis (another term for spondylolisthesis) and mild degenerative changes of the spine); R. at 400 (November 2012 CT scan showing, inter alia, anterolisthesis, spondylolysis, "severe bilateral neural foraminal stenosis at L5-S1," and "[l]umbar spondylosis and facet joint osteoarthritis"). And while the later studies showed some progression, as the ALJ noted, an examination by Dr. Duffy in November 2014, a week before Dr. Darnall submitted his Physical Medical Source Statement, "revealed normal paraspinous muscle tone with no mid-line spinous

tenderness, paraspinous tenderness or spasm and no significant restriction in lateral flexion, extension, flexion or lateral bending." R. at 17 (citing R. at 474).

As to the other examination findings cited by Plaintiff, some of those findings concern problems with no apparent connection to the chronic lumbar pain that Dr. Darnall opined was disabling. *See* Pl.'s Objs. 5 (citing findings regarding Plaintiff's right elbow, hand, shoulder, and tibia). Some of the treatment notes cited by Plaintiff, including treatment notes from Dr. Duffy and Dr. Figucia, do include findings of lumbar tenderness, spasm, and decreased and painful range of motion. Although the ALJ mentioned only some of those findings,[4] *see* R. at 17 (noting Dr. Bongiovanni's finding of "mildly limited lumbar range of motion" and nurse practitioner Maria Lepore's finding of "moderate tenderness at L4 and L5 with decreased lumbar range of motion"), as the Magistrate Judge noted, "none of those findings undercut the ALJ's conclusion that [Plaintiff's] neurovascular functioning, muscle tone, and strength were consistently normal," R. & R. 16. Indeed, virtually all of the treatment notes cited by Plaintiff include findings of normal neurovascular functioning, muscle tone, and strength. For example, Plaintiff asserts that Dr. Duffy's March, May, June, and November 2014 lumbar spine examinations "consistently revealed a reduced and painful range of motion, paraspinal tenderness to palpation and positive straight leg raises." Pl.'s Objs. 3. But the March, May, and June treatment notes also include the same findings of normal lower extremity strength and neurovascular functioning noted by the ALJ, as well as findings of normal lower extremity and paraspinous muscle tone and a lack of spasm. R. at 482, 485-86, 489. And, as the ALJ noted, the November treatment notes "revealed

---

[4] An ALJ need not "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *see also Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss . . . every tidbit of evidence included in the record.").

normal paraspinous muscle tone with no mid-line spinous tenderness, paraspinous tenderness or spasm and no significant restriction in lateral flexion, extension, flexion or lateral bending." R. at 17 (citing R. at 474); *see also* R. at 366 (notes from Dr. Figucia finding spasm and tenderness of the paraspinal muscles, but normal lower extremity strength, gait, and posture); R. at 302, 458-59 (notes from Dr. Gerald Dworkin, who administered epidural injections to Plaintiff, reflecting that Plaintiff had pain on flexion and extension of the lumbar spine but "no focal motor weakness").

Plaintiff argues the findings cited by the ALJ are immaterial because a treating physician's medical opinion need not be supported by *all* the other evidence in the record to qualify as "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Pl.'s Objs. 4 (citing SSR 96-2p, a policy interpretation ruling regarding when treating source medical opinions are entitled to controlling weight). Plaintiff is correct that a medical opinion may be found to be well-supported even if the opinion is not fully supported by the other medical evidence. *See* SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996). For a medical opinion to receive controlling weight, however, there must also be "no other substantial evidence in the case record that contradicts or conflicts with the opinion." *Id.* at *3. Here, the consistently normal findings cited by the ALJ constitute substantial evidence that conflicts with Dr. Darnall's opinion. Moreover, the Court agrees with the Magistrate Judge that based on those findings and the other evidence cited by the ALJ, the ALJ's decision to give Dr. Darnall's opinion "little weight" is supported by substantial evidence.

The second Physical Medical Source Statement at issue was completed in March 2015 by Dr. Rubino, a pain management doctor whom Plaintiff had begun seeing two months earlier. On his form, Dr. Rubino diagnosed Plaintiff with lumbar degenerative disc disease and degenerative

joint disease and described Plaintiff's symptom as pain in the legs and low back. R. at 491. Like Dr. Darnall, Dr. Rubino opined that, as a result of his impairments, Plaintiff could sit and stand/walk for less than two hours in an eight-hour workday, would require the occasional use of a cane or other hand-held assistive device while standing and walking, and would require five or more unscheduled breaks of 10 minutes each due to pain and the adverse effects of his medication. R. at 492-93. Dr. Rubino also opined that Plaintiff could never lift or carry 50 pounds but could lift or carry 20 pounds occasionally; could occasionally twist, stoop, and climb stairs; and could never crouch or climb ladders. R. at 493. Although he stated Plaintiff was likely to be off task 25% or more of the time, he indicated that Plaintiff was capable of low stress work. R. at 494.

Consistent with his treatment of Dr. Darnall's opinion, the ALJ gave Dr. Rubino's opinion "little weight" because it was inconsistent with other clinical and objective findings in the record and because Dr. Rubino "lack[ed] program knowledge." R. at 20. The ALJ specifically noted Dr. Rubino's opinion was inconsistent with (1) Dr. Duffy's June 2014 examination findings of "normal lower extremity strength bilaterally and normal neurovascular functioning"; (2) Dr. Figucia's June 2014 examination findings of "normal lower extremity strength bilaterally and a normal gait"; and (3) Dr. Rubino's own February 2015 treatment notes, which indicated Plaintiff was working but "did not mention any use of a cane for weight-bearing/ambulation." *Id.*

Plaintiff argues that notwithstanding the findings cited by the ALJ, Dr. Rubino's opinion is consistent with his own examination findings and with the record as a whole. The Court disagrees. Dr. Rubino's medical records for Plaintiff consist of two pages of handwritten notes regarding Plaintiff's three office visits in January, February, and March 2015, and a four-page

medication monitoring report from a third-party monitoring company. *See* R. at 496-501. The notes of Plaintiff's February visit include no examination findings, and the notes of the March visit reference only severe psoriasis on Plaintiff's right leg. R. at 496. The notes of Plaintiff's initial January visit include more extensive examination findings, though Dr. Rubino's handwriting makes them difficult to decipher. *See* R. at 497. In his Physical Medical Source Statement, Dr. Rubino identifies decreased range of motion in the trunk and positive straight leg lifts as the relevant clinical findings and objective signs. R. at 491. The January treatment notes, however, appear to support only the former finding, as they include the notation "neg B leg lift," suggesting leg lifts were negative. R. at 497. The Court agrees with the Magistrate Judge that "[t]he normal findings from Dr. Duffy and Dr. Figucia in June 2014 constitute substantial evidence to support the ALJ's rejection of Dr. Rubino's more restrictive assessment." R. & R. 20. Nor was the ALJ's reliance on Dr. Rubino's February 2015 treatment note improper. Plaintiff stresses that the February 2015 note refers to a brief unsuccessful attempt to return to work and that Dr. Rubino opined that Plaintiff would occasionally require use of a cane while standing or walking. *See* Pl.'s Objs. 6. But, as the Magistrate Judge noted, the fact that Plaintiff was engaged in work that would preclude use of cane and the lack of any reference to a cane in Dr. Rubino's treatment notes constitute substantial evidence undermining Dr. Rubino's opinion that a cane was necessary. *See* R. & R. 20.

Plaintiff also renews his arguments that the ALJ improperly discounted Dr. Darnall and Dr. Rubino's opinions based on their lack of program knowledge and failed to consider all of the pertinent regulatory factors in weighing their opinions. These arguments lack merit. As the Magistrate Judge noted, the extent of a treating physician's "understanding of [the Social Security Administration's] disability programs and their evidentiary requirements" is a

11

permissible consideration in weighing opinion evidence. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Although it is not clear how the treating physicians' lack of program knowledge would have impacted their ability to respond to questions about the extent of Plaintiff's limitations, any error in this regard is harmless, as the ALJ had substantial evidence to conclude the opinions were inconsistent with the record. *See* R. & R. 21. With respect to the regulatory factors, as Plaintiff acknowledges, the ALJ's opinion reflects consideration of at least two of those factors: supportability and consistency. *See* Pl.'s Objs. 7. While the ALJ did not specifically address the length and nature of Plaintiff's treating relationship with Dr. Darnall or Dr. Rubino's status as a specialist, he acknowledged the applicable standards and stated he considered the opinion evidence in accordance with those standards. *See* R. at 16. Here, too, any error by the ALJ in failing to explicitly address the factors cited by Plaintiff is harmless, as Plaintiff has not shown how consideration of these factors would have affected his evaluation of either opinion, given his conclusion that the opinions were inconsistent with the physicians' own treatment notes. *See Hall v. Colvin*, No. 16-32, 2016 WL 6217067, at *3 (W.D. Pa. Oct. 25, 2016) (noting an ALJ need not explicitly discuss each of the regulatory factors and holding an ALJ appropriately declined to give significant weight to a treating physician's opinion based on the opinion's lack of consistency and supportability); *Carnahan v. Astrue*, No. 11-7848, 2012 WL 4205613, at *14 & n.11 (E.D. Pa. Sept. 20, 2012) (holding any error in ALJ's failure to expressly address all of the regulatory factors was harmless where the ALJ addressed consistency and supportability and the claimant made no specific argument as to how "the nature of his treating relationships and the specialization of his treating physicians would impact the ALJ's RFC determination"). For the reasons set forth above and those set forth in the Report and Recommendation, Plaintiff's objection regarding the Magistrate Judge's rejection of the

argument that the ALJ erred in evaluating Dr. Darnall and Dr. Rubino's opinions will be overruled.

Plaintiff's remaining objections are similarly unpersuasive. Plaintiff renews his argument that the ALJ's RFC finding is not rooted in the record. The Magistrate Judge thoroughly addressed this objection, which will be overruled for reasons set forth in the Report and Recommendation.

Finally, Plaintiff renews his argument that the ALJ failed to properly consider the combined effect of his impairments. Plaintiff appears to argue that the combined effect of his physical and mental impairments supports a more restrictive RFC, citing findings in Dr. Darnall and Dr. Rubino's Physical Medical Source Statements that Plaintiff's depression and anxiety affect his physical condition (pain) and his pain interferes with his ability to maintain the attention and concentration necessary to perform simple work tasks. *See* Pl.'s Objs. 10. As the Magistrate Judge noted, however, "[t]o the extent [Plaintiff] believes his combination of impairments causes more severe pain than the ALJ found, the ALJ supported his severity determination with substantial evidence." R. & R. 23-24. And the ALJ acknowledged Plaintiff's concentration issues and sought to accommodate Plaintiff's "mental/emotional disorders and his allegations of memory and concentration problems" by limiting him to routine and repetitive tasks using judgment consistent with such tasks and only occasional changes in a routine work setting. R. at 22; *see also* R. at 16, 21 (finding Plaintiff suffered from "moderate deficiencies of concentration, persistence, or pace"). For these reasons and for the reasons set forth in the Report and Recommendation, this objection will also be overruled.

Because Plaintiff's objections to the Report and Recommendation lack merit, the objections will be overruled, the Report and Recommendation will be approved and adopted, and Plaintiff's request for review will be denied. An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez   
Juan R. Sánchez, C.J.